UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CR708CEJ(MLM) |
| ) | |
| ROBERT RUCKER, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on the Motion to Suppress Evidence and Statements filed on behalf of defendant. [Doc. 18] The government responded. [Doc. 22]

An Evidentiary Hearing was held on January 13, 2006. The government presented the testimony of Everett Culberson, a Police Officer with the St. Louis Metropolitan Police Department assigned to the Ninth District. Defendant presented the testimony of Elbert Davis, a witness to the incident at issue. Based on the testimony and evidence adduced and having had the opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

PO Culberson testified that at approximately 10:00 p.m. on November 27, 2005 he and his partner, PO Brown, were on routine patrol in a two-man, marked police vehicle in the 2600 block of Caroline. PO Culberson testified he is aware that that street is known for drug trafficking and is located in a high crime area. PO Culberson, who was driving the police vehicle, observed an African American male sitting in the driver's seat of a parked vehicle with the engine running. The car was parked facing north in a parking lot. He had never seen the driver before. PO Culberson pulled his vehicle in front of the parked vehicle, facing west. In order to get a better view, he illuminated the

parked car with his spot light.[1] He identified the defendant, Robert Rucker, as the driver of the car. PO Culberson observed defendant make several upper body movements and then defendant exited his car. The officers exited their vehicle. PO Culberson approached defendant to do a pedestrian check while PO Brown remained in front of defendant's car. PO Culberson told defendant of the pedestrian check and asked defendant for his pedigree and driver's license. Defendant was standing just outside his car with the door open and PO Culberson was approximately one foot away from him. The door was not between them.[2] PO Culberson illuminated the front seat and console area of defendant's car with his flashlight. He saw a clear baggie with white chunks near the dashboard on top of the ashtray. The radio was missing and there was a hole where it had been. The ashtray is immediately below the hole. See Government's photos, Gov. Ex. A and B. Based on his experience and numerous other arrests he has made, he believed the chunks were crack cocaine. PO Culberson asked defendant to step to the front of the car with PO Brown and he returned to the car and retrieved the baggie. He told defendant he believed it was crack cocaine and placed him under arrest. He handcuffed defendant and made a further search of the car. He found a loaded handgun under the driver's seat. He advised defendant of his <u>Miranda</u> Rights and defendant indicated he understood. Defendant appeared lucid and to understand PO Culberson's questions. He did not appear to be on drugs or alcohol. No coercion or threats of any kind were employed to induce defendant to make a statement. Defendant said he was on paper for the same thing. Later, at the Police Station, PO Culberson asked defendant if he wanted to write his statement and defendant said he did not.

Prior to transporting defendant to the Station for booking, defendant's girlfriend, Stephanie White, arrived with a male subject in a vehicle with her. PO Culberson did not speak to the male

---

[1] On cross examination PO Culberson testified specifically that he did not tell defendant to stick his hands out of the window.

[2] On cross examination PO Culberson specifically testified he did not search defendant nor pat him down when he first approached defendant.

subject but defendant's girlfriend said that the car driven by defendant was hers and she wished to get some things out of her car. PO Culberson told her that that was not allowed.

Later at the Station PO Culberson ran the car's VIN and license plates and neither was registered.

Elbert Davis[3] testified that he will be twenty years old on July 16, 2006 and he attends Missouri State University. He is not related to defendant nor a "close, personal friend." He grew up next door to defendant. He said he was stepping out of his residence and saw defendant in the parked car. He knocked on the window of defendant's car, sat in defendant's car for about 30 seconds, spoke to defendant briefly, then left. Davis was knocking on a friend's door nearby when he saw the police car pull in front of defendant's car. He saw defendant put his hands out of the window. When defendant exited his car, he saw him put his hands on the car and saw PO Culberson pat defendant down. He did not see PO Culberson reach into defendant's pockets. Davis' friend, Ronald, last name unknown, did not answer the knock on his door so Davis walked back to his own house. He spoke to the officer on the passenger side of defendant's car and PO Culberson told PO Brown to grab him and handcuff him as well.[4] PO Brown asked his name and found his college ID in his pocket.

Davis said he was there when the officer found the crack cocaine but he did not know where in the car it was located. He said he was there when the officer found the gun but he did not know where in the car it was located.

Although there is some inconsistency between the testimony of Davis and PO Culberson, the court finds that there is no inconsistency about the finding of the crack cocaine and gun in defendant's car. As far as the pat down is concerned, it may reflect on the memory of either Davis

---

[3] Elbert Davis is not mentioned in the Police Report of the incident.

[4] PO Culberson specifically testified no one was handcuffed except defendant.

or PO Culberson but it does not impact suppression issues.  See Footnote 5.  The same is true of whether defendant stuck his hands out of the window or whether Davis was handcuffed.

## CONCLUSIONS OF LAW

1.      **Seizure of the Crack Cocaine**

As an initial matter, it should be noted that not every encounter between a law enforcement officer and an individual constitutes a seizure within the meaning of the Fourth Amendment.  INS v. Delgado, 466 U.S. 210, 215-17 (1984); United States v. Campbell, 843 F.2d 1089, 1092 (8th Cir. 1988).  The law is clear that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place by asking him if he is willing to answer some questions [and] by putting some questions to him."  Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Mendenhall, 446 U.S. 544, 555 (1980); Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968); Campbell, 843 F.2d at 1093.  No objective justification is needed for this type of consensual encounter because no constitutional interest is implicated.  Mendenhall, 446 U.S. at 554-55.  Here the officers were carrying out routine police work when they approached defendant for a pedestrian check while he was sitting in his car on a parking lot with the engine running, at night, in a high crime area.  When the officers pulled on the lot they shined their spotlight on defendant's vehicle.  It is well established that the use of artificial illumination does not implicate any right secured by the Fourth Amendment.  Texas v. Brown, 460 U.S. 730, 740 (1983) quoting United States v. Lee, 274 U.S. 559, 563 (1927)("[T]he use of a search light is comparable to the use of a marine glass or field glass.  It is not prohibited by the Constitution."); see also United States v. Pugh, 566 F.2d, 626, 627 Note 2 (8th Cir. 1977), cert. denied, 435 U.S. 1010 (1978).

When defendant exited his vehicle and PO Culberson approached the car, PO Culberson shined his flashlight into the interior of the car and observed what he believed to be crack cocaine

in a baggie on top of the ash tray.[5]   When police officers are lawfully in a particular location and observe items in plain view which they have probable cause to believe are contraband or evidence of a crime, they may seize such items without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 464-73 (1971); Arizona v. Hicks, 480 U.S. 321, 326 (1987); United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990), cert. denied, 498 U.S. 1068 (1991). There is no requirement that the discovery be inadvertent. Horton v. California, 496 U.S. 128, 136-143, 110 S.Ct. 2301, 2308-11 (1990). The use of artificial illumination does not preclude the observations of the officers from the application of the plain view doctrine. Johnson v. Goodman, 506 F.2d 674, 676 (8th Cir. 1974), cert. denied, 421 U.S. 917 (1975). The seizure of the crack cocaine was lawful. The crack cocaine should not be suppressed.

**2.    Arrest of Defendant**

Law enforcement officers may arrest a person without a warrant if they have probable cause to believe that the person has committed or was committing a crime. Gerstein v. Pugh, 420 U.S. 103 (1975); United States v. Watson, 423 U.S. 411 (1976). Probable cause for arrest exists if at the time of the arrest the facts and circumstances within the knowledge of the officers and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the person had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). See also R.S.Mo § 544.216 (a municipal law enforcement officer may arrest on view without a warrant

---

[5] Out of an abundance of caution, the court will address the pat down of defendant to which Elbert Davis testified. PO Culberson testified specifically that he did not pat down defendant when he approached defendant standing by his car; however, even if he had done so, it would have been lawful. Police officers may briefly detain an individual for investigative purposes when they have reasonable suspicion that criminal activity is taking place. See Terry v. Ohio, 392 U.S. 1, 9-10 (1968); United States v. Thompkins, 998 F.2d 629, 633 (8th Cir. 1993); United States v. Horne, 4 F.3d 579, 588 (8th Cir. 1993), cert. denied, 510 U.S. 1138 (1994). The police may frisk for weapons for their own safety. See Pennsylvania v. Mimms, 434 U.S. 106, 111-112 (1977). Here, defendant was sitting in a car with the engine running on a parking lot at night in a high crime area and on a street known for drug trafficking. Given the close connection between drugs and guns, PO Culberson clearly had reasonable suspicion that criminal activity may have been afoot. See Terry v. Ohio, 392 U.S. at 9-10. If the court should find there was a pat down, it was a lawful pat down. In any event, no contraband was found on defendant's person, thus the pat down issue is moot.

any person about whom he has reasonable grounds to believe has violated any law of this state). Clearly, after the discovery of the crack cocaine defendant was lawfully arrested.

**3.     Search of the Car**

New York v. Belton, 453 U.S. 454, 460, n.4 (1984) holds that when a law enforcement officer has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of the arrest, search the passenger compartment of the automobile and the contents of containers in the passenger compartment including the glove compartment, but not the trunk. Here the search of the interior of defendant's car was lawful as was the seizure of the handgun located under the driver's seat. It should not be suppressed.

**4.     Statements**

After defendant was arrested he was advise of his Miranda Rights and indicated he understood. He appeared lucid and to understand PO Culberson's questions. He was not threatened or coerced. A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry" Dickerson v. United States, 530 U.S. 428, 444 (2000). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Haynes v. Washington, 373 U.S. 503 (1963); Colorado v. Connelly, 479 U.S. at 170. However, as the Supreme Court stated in Berkemer v. McCarthy, 468 U.S. 420

(1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda are rare." Id. at 433 n. 20; Dickerson, 530 U.S. at 444. Defendant's statements should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Evidence and Statements be **DENIED**. [Doc. 18]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
**MARY ANN L. MEDLER**
**UNITED STATES MAGISTRATE JUDGE**

Dated this   26th   day of  January, 2006.